Filed 2/2/21  Roussos v. Roussos CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| HARRY ROUSSOS et al., | B293356 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BS165997) |
| v. | |
| THEODOSIOS ROUSSOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory W. Alarcon, Judge.  Affirmed.

Nossaman, Jennifer L. Meeker and Maya G. Hamouie for Defendant and Appellant.

RMO, Scott E. Rahn, Sean D. Muntz and David G. Greco for Theocharis Roussos as Amicus Curiae on behalf of Defendant and Apellant.

Kesselman Brantly Stockinger, S.V. Stuart Johnson and Ryan Davis for Plaintiffs and Respondents.

Theodosios (Ted) Roussos appeals from a judgment confirming two arbitration awards. In the first award (the partition award), the arbitrator granted Harry and Christine Roussos's request for partition by sale of six properties owned by two limited partnerships and a corporation, which in turn were owned by Ted and Harry[1] as cotrustees of two trusts.[2] Ted contends the arbitrator exceeded his powers because the properties were the assets of the trusts, and the trusts were expressly excluded from the arbitration agreement; Christine lacked standing to seek partition based on her status as a beneficiary of the trusts; Harry and Christine failed to join indispensable parties to the partition action; and the arbitrator erred in ordering partition because the provisions in the applicable partnership agreements prohibited the partners from seeking partition.[3] However, Ted's petition to vacate the awards was untimely and deficient. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Trusts and Roussos Entities*

Harry and Ted are brothers and cotrustees of the S.M.B. Investor Associates Irrevocable Trust (SMB Trust) and the O.F. Management Irrevocable Trust (OF Trust; collectively, the

---

[1]    Because the Roussos family members share the same last name, we refer to them by their first names to avoid confusion.

[2]    On appeal Ted only challenges the first award, not the later award of attorneys' fees.

[3]    Amicus curiae Theocharis (Harris) Roussos joins in Ted's substantive arguments.

Trusts).  Harry's wife Christine and Ted's wife Paula Roussos, along with their respective children, were beneficiaries of the Trusts.[4]

Harry and Ted had management roles and financial interests in multiple interrelated companies.  As cotrustees of the SMB Trust, Harry and Ted were the sole shareholders of Dazum Limited (Dazum), which in turn was the sole shareholder of Velnor Overseas Ltd. (Velnor), which was the sole shareholder of S.M.B. Management, Inc. (SMB Management).  SMB Management owned a 1 percent interest as the general partner in S.M.B. Associates, L.P. (SMB LP).  The other 99 percent was owned by Harry and Ted as cotrustees of OF Trust.

As cotrustees of OF Trust, Harry and Ted were the sole shareholders of Fenbe, Ltd. (Fenbe), which in turn was the sole shareholder of Kelroad International, Inc. (Kelroad), which was the sole shareholder of Liro, Inc. (Liro).  Liro owned a 1 percent interest as the general partner of O.F. Enterprises Ltd., L.P. (OF LP).  The other 99 percent of OF LP was owned by Harry and Ted as cotrustees of OF Trust.

SMB LP, OF LP, and Liro owned six properties, including five apartment buildings and a vacant lot in Southern California (the properties).  SMB LP owned an apartment building at 153 San Vicente Boulevard, Santa Monica.  OF LP owned three apartment buildings: 2727 Abbot Kinney Boulevard, Venice; 39 Paloma Avenue, Venice; and 580 West E Street, Colton.  Liro

---

[4] By their own terms, the Trusts terminated on March 31, 2019, with the Trust assets to be divided equally among Christine, Harry and Christine's children, Paula, and Ted and Paula's children.

owned a vacant lot at 2721 Abbot Kinney Boulevard, Venice and an apartment building at 2209 Ocean Front Walk, Venice.[5]

SMB LP and OF LP were governed by similar limited partnership agreements. Paragraphs 7.3.2 and 8.7.9.2 of each partnership agreement specified the limited partners did not have the right to "bring an action for partition against the Partnership."

B.    *The Arbitration Agreement*

As a result of significant disagreements between Ted and Harry on management and operation of the family businesses, in December 2012 Ted, Paula, Harry, and Christine stipulated to binding arbitration. Ted and Harry signed the arbitration agreement on behalf of themselves, OF LP, and SMB LP. Two other individuals signed the agreement on behalf of Liro, SMB Management, Velnor, Kelroad, Fenbe, and Dazum. The arbitration agreement provides in part, "1. The parties stipulate and agree not to contest that Judge John P. Shook will arbitrate all issues with binding authority over Harry Roussos, Christine Roussos, Theodosios Roussos, Paula Roussos, S.M.B. Investor

---

[5]    According to Ted, the 153 San Vicente Boulevard and 2727 Abbot Kinney Boulevard properties were sold after the arbitration. Ted also asserts 2209 Ocean Front Walk, LLC (OFW LLC), which was not a party to the arbitration agreement or arbitration, owns 2209 Ocean Front Walk and possibly 2721 Abbot Kinney Boulevard. However, in *Liro, Inc. v. 2209 Ocean Front Walk* (Super. Ct. L.A. County, 2011, No. SC108947), the trial court on January 7, 2011 entered judgment quieting title to the two properties. The court ruled Liro had been the sole owner of 2721 Abbot Kinney Boulevard and 2209 Ocean Front Walk since 1995, and OFW LLC never owned the two properties.

4

Associates, LP; O.F. Enterprises Ltd[.], L.P[.]; Liro, Inc[.]; S.M.B. Management, Inc.; Velnor Overseas Ltd[.]; Kelroad International, Inc.; Fenbe Ltd[.]; [and] Dazum Limited. [¶] . . . [¶] 4. Nothing in this agreement shall be construed as submitting S.M.B. Investor Associates Irrevocable Trust or O.F. Management Irrevocable Trust to this arbitration; the parties reserve all rights as to any arguments regarding the arbitrability of issues or claims arising out of or relating to the above-mentioned trusts. [¶] 5. The prevailing party shall be entitled to recover all litigation costs, including attorney fees, and expert fees. [¶] 6. The arbitration costs shall be born[e] jointly by Liro, Inc. and S.M.B. Management, Inc. Upon request of a prevailing party, Judge Shook has the discretion to order any party to reimburse said arbitration costs to Liro, Inc. and/or S.M.B. Management, Inc."

C. *The Partition Award*

As part of the arbitration, Harry and Christine sought partition by sale of the six properties; Ted and Paula sought partition by appraisal. The arbitrator (Retired Judge Shook) also resolved competing claims asserted by the parties, including for fraud, breach of contract, breach of fiduciary duties, accounting, conversion, and intentional and negligent infliction of emotional distress. Harry and Christine named Ted and Paula as respondents in the arbitration, as well as OF LP, SMB LP, SMB Management, Liro, Velnor, Kelroad, Fenbe, and Dazum (collectively the Roussos Entities), and OFW LLC. However, only Harry, Christine, Ted, and Paula were present with their counsel at the arbitration. No appearances were made by or on behalf of

5

the Roussos Entities.[6]  The arbitrator held he had binding authority and unlimited jurisdiction over the parties to the arbitration agreement.

On July 29, 2016 the arbitrator issued his statement of decision and judgment (partition award).  On September 14, 2016 the arbitrator served the partition award on Harry, Christine, Ted, and Paula though their respective counsel by mail and e-mail.  The arbitrator found Christine had an equitable interest in the Roussos Entities and their properties as a beneficiary of the Trusts and on this basis had standing to bring the claim and seek partition of the properties.  The arbitrator concluded, "Here, partition by sale is the appropriate solution.  First, the Properties cannot be divided in sub-parcels due to their nature as fully developed rental properties.  Second, partition by sale will permanently end Harry Roussos and Ted Roussos['s] disputes related to the Properties.  Third, and perhaps most importantly, it will allow the parties to seize upon the tremendous once-in-a-lifetime gains the Properties have realized in the current unprecedented real estate market.  Additionally, equally dividing the Properties in kind between the Limited Partnerships [(SMB LP and OF LP)] would not resolve the disputes here.  This is because Harry Rousso[s] and Ted Rousso[s] cannot effectively manage the Properties when they must agree with each other." (Underscoring omitted.)  The arbitrator found the limited partnership agreements contained waivers of the right to partition, but he exercised his equitable powers to strike the provisions.

---

[6]     The record does not reflect whether the Roussos Entities were properly served with notices of the arbitration, but Ted does not assert they were not.

The arbitrator rejected Ted's request for partition by appraisal, explaining, "[T]his is not legally possible as a forced sale, because this Arbitrator does not have jurisdiction over the trusts," and he could not force the Trusts to sell their assets. The arbitrator ordered OF LP, SMB LP, and Liro to sell the properties and to maximize the value for the trust beneficiaries. The arbitrator further ordered the parties to bear their own costs of suit, arbitration fees, and attorneys' fees.

D.     *The Parties' Competing Petitions in the Trial Court*

On October 21, 2016 Harry and Christine filed a "petition to confirm arbitration award," which sought to confirm the partition award (case No. BS165997). After a further arbitration held on November 16, 2016, on November 19 the arbitrator issued a separate attorneys' fees award (fee award), ordering SMB Management and Liro to pay the attorneys' fees incurred by Harry, Christine, Ted, and Paula in the arbitration based on an indemnification provision in both corporations' bylaws.[7] The arbitrator noted that Harry, Christine, Ted, and Paula had no objection to entry of the fee award. On December 14, 2016 Harry and Christine filed a first amended petition to confirm the partition and fee awards.

---

[7]     We grant Ted's September 27, 2019 request for judicial notice as to exhibits 1 (petition to vacate arbitration award, with attached attorneys' fees award), 5 (opposition to motion to vacate arbitration award), and 6 (declaration in support of petition to confirm arbitration award) pursuant to Evidence Code sections 452, subdivision (d), and 459. We deny Ted's request as to the other exhibits and his February 20, 2020 request for judicial notice as not necessary to our decision.

Ted did not respond to Harry and Christine's first amended petition. Instead, on February 24, 2017 Ted and Paula's estate[8] filed a "petition to vacate contractual arbitration award" in a separate action (case No. BS168231).[9] The petition named as respondents Harry and Christine, the owners of the six properties (SMB LP, OF LP, and Liro), and SMB LP's general partner, SMB Management. The petition attached the arbitration agreement and the fee award, but not the partition award. The petition acknowledged Ted and his counsel received the fee award on November 22, 2016.

On May 22, 2017 Harry and Christine filed a second amended petition and a motion to confirm the partition and fee awards. The petition and motion named Ted, Sophia, SMB LP, SMB Management, OF LP, Liro, Velnor, Kelroad, Fenbe, and Dazum as respondents.

On June 21, 2017 Ted and Sophia filed an opposition to the second amended petition and motion. They contended Ted's and Harry's "Chapter 7" bankruptcies automatically stayed all litigation; Harry and Christine did not obtain relief from the automatic stay; and the bankruptcy court sold the San Vicente Boulevard property at auction. Ted and Sophia also argued the arbitrator did not have jurisdiction over assets that were outside the scope of the arbitration agreement; Harry and Christine had no standing to seek partition of the properties; Harry waived his

---

[8] Paula passed away in November 2016. Her daughter Sophia Roussos was later appointed the special administrator of Paula's estate.

[9] On May 11, 2017 Harry and Christine filed a notice of related case stating that case No. BS168231 was related to case No. BS165997. The trial court later related the two cases.

8

right to seek partition under the terms of the partnership agreements for SMB LP and OF LP; and the properties could not be partitioned until the Trusts terminated on March 31, 2019, at which time the assets would be equally divided among the beneficiaries.  On December 28, 2017 Ted filed an opposition to the motion to confirm the awards in which he repeated his jurisdictional and standing arguments.  He also argued Harry and Christine failed to authenticate the arbitration agreement and to join indispensable parties.  In their reply brief, Harry and Christine objected to Ted's petition to vacate as untimely because it was served more than 105 days after mailing of the fee award (including five days for mailing), was not served on all parties, and failed to state the grounds for the petition.  Harry and Christine also addressed Ted's substantive arguments.

Counsel for Ted, Harry, Christine, OF LP, and SMB LP appeared at the January 11, 2018 hearing on Harry and Christine's motion to confirm the partition and fee awards.  The parties addressed the timeliness as well as the substantive arguments.  On January 12 the trial court granted the motion, and on November 19, 2018 the court entered judgment confirming the two awards.  On November 21, 2018 Harry and Christine served notice of entry of judgment on Ted, Sophia, SMB LP, SMB Management, OF LP, Liro, Dazum, Kelroad, Fenbe, and Velnor.  Ted timely appealed from the judgment.

# DISCUSSION

A.    *Judicial Review of Arbitration Awards*

Code of Civil Procedure section 1285[10] provides that "[a]ny party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award." An arbitration award "is not subject to judicial review except on the grounds set forth in sections 1286.2 (to vacate) and 1286.6 (for correction)." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 33; accord, *Soni v. SimpleLayers, Inc.* (2019) 42 Cal.App.5th 1071, 1086 (*Soni*).)[11]

"A petition to vacate an award or to correct an award shall be served and filed not later than 100 days after the date of the service of a signed copy of the award on the petitioner." (§ 1288.) "The filing and service deadline for a petition to vacate is jurisdictional; noncompliance deprives a court of the power to vacate an award unless the party has timely requested vacation in response to a petition to confirm." (*Santa Monica College Faculty Assn. v. Santa Monica Community College Dist.* (2015) 243 Cal.App.4th 538, 544-545 (*Santa Monica College*); accord, *Abers v. Rohrs* (2013) 217 Cal.App.4th 1199, 1211 ["The trial court's power to vacate an arbitration award is governed by statute, and the deadline for seeking such relief is mandatory."].)

---

[10]    All further references are to the Code of Civil Procedure unless otherwise indicated.

[11]    Section 1286.2, subdivision (a)(4), authorizes the court to vacate an arbitration award on enumerated grounds including if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

10

Further, "'"[a]n appeal of the judgment confirming the award may not be used to circumvent the prescribed time allowed to petition for vacation or correction of the award."'" (*Soni, supra*, 42 Cal.App.5th at p. 1093; accord, *Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 659.)

In reviewing the ruling on a petition under section 1285, "[w]e apply the substantial evidence test to the trial court's determination of disputed factual issues." (*Soni, supra*, 42 Cal.App.5th at p. 1087; accord, *EHM Productions, Inc. v. Starline Tours of Hollywood, Inc.* (2018) 21 Cal.App.5th 1058, 1063.) But "'[i]ssues of statutory interpretation and the application of that interpretation to a set of undisputed facts are questions of law subject to independent review by this court.'" (*Soni*, at p. 1087; accord, *Loeb v. Record* (2008) 162 Cal.App.4th 431, 441.)

B.     *Ted's Petition To Vacate the Arbitration Awards Was Untimely and Deficient*

Under section 1288, Ted was required to file and serve his petition to vacate the arbitration awards by March 6, 2017—100 days after the date of the service of the November 19, 2016 fee award (which concluded the arbitration), plus five days for service by mail (§ 1013, subd. (a)).[12] But Ted only served Harry

_____

[12]     Because the arbitrator served the arbitration awards by mail, section 1013, subdivision (a), extended Ted's time to file and serve the petition to vacate the award by five days to 105 days from the date of service. (*Oaktree Capital Management, L.P. v. Bernard* (2010) 182 Cal.App.4th 60, 65 [§ 1013, subd. (c), extended by two days the 10-day deadline for appellant to seek

11

and Christine on March 6, 2017. He served SMB Management, Liro, SMB LP, and OF LP—all parties to the arbitration and named in Ted's petition—on March 9, 2017.[13] Because Ted did not serve his petition on SBM Management, Liro, SBM LP, and OF LP until March 9, 2017, his petition was untimely. (*Santa Monica College, supra*, 243 Cal.App.4th at p. 545 [trial court lacked jurisdiction to vacate arbitration award where petition to vacate was served 108 days after service of award]; *Eternity Investments, Inc. v. Brown* (2007) 151 Cal.App.4th 739, 745 ["'If [the party who lost in the arbitration does] not serve and file a petition to vacate or a response to [a] petition to confirm within the 100-day period from the date of service of the award . . . , the award must be treated as final.'"])

Further, section 1286.4, subdivision (b), provides the court may not vacate an award unless "(1) All petitioners and respondents are before the court; or  [¶]  (2)  All petitioners and respondents have been given reasonable notice that the court will be requested at the hearing to vacate the award . . . ." Ted's petition to vacate the awards failed to name as respondents or

---

vacation of the arbitration award in response to the petition to confirm the award under § 1290.6]; see *Camper v. Workers' Comp. Appeals Bd.* (1992) 3 Cal.4th 679, 685 ["'[W]here a prescribed time period is triggered by the term "service" of a notice, document or request then section 1013 will extend the period.'"].)

[13]    We grant Harry and Christine's January 31, 2020 request for judicial notice of exhibit 3 (proofs of service of Ted's petition to vacate arbitration awards) under Evidence Code sections 452, subdivision (d), and 459. We deny Harry and Christine's request for judicial notice of other documents as not necessary to our decision.

12

give notice to the other parties to the arbitration—Dazum, Fenbe, Kelroad and Velnor, and they were not represented in the trial court proceedings.

Likewise, Ted and Sophia's June 21, 2017 filing of an opposition to Harry and Christine's motion to confirm the partition and fee awards was filed and served more than 100 days after service of the fee award.  Thus, Ted's opposition was not a timely response to Harry and Christine's petition to confirm the partition award or first amended petition to confirm the partition and fee awards.  (*Soni, supra*, 42 Cal.App.5th at p. 1093 [appellant "was barred from asserting that the arbitrator exceeded his powers as grounds to prevent confirmation of the petition" where his "response to the petition to confirm the award was filed more than 100 days after service of the award"]; *Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 384-385 ["'[a] response to a petition' to confirm an award 'may request the court to . . . vacate the award' (§ 1285.2), but a response containing such a request is only timely if it is 'served and filed not later than 100 days' after the responding party was served with a signed copy of the award (§ 1288.2)"].)

Moreover, section 1285.8 requires a petition to vacate an award "set forth the grounds on which the request for such relief is based."  Ted's petition did not state any grounds to vacate the arbitration awards, nor did it include a copy of the July 29, 2016 partition award, instead attaching only the November 19, 2016 fee award.  Although the petition stated "[t]he facts supporting the grounds for vacating the award" were contained in attachment 10c(2), the attachment did not specify any grounds for vacatur.  The attachment only argued the 100-day requirement was tolled because Paula's death on November 29,

2016 made it impracticable to proceed with the petition by the deadline because the probate court had not yet appointed a representative for Paula's estate. But Paula's death would not have prevented Ted from timely filing and serving a petition to vacate the arbitration awards that properly set forth the grounds for relief.[14]

Ted relies on *Shepherd v. Greene* (1986) 185 Cal.App.3d 989, 993, for the proposition the 100-day deadline is tolled during the period it is "impossible or impracticable" to proceed with a petition. Ted reads the holding in *Shepherd* too broadly. The court there held the 100-day deadline for filing a petition to correct and confirm an arbitration award (a State Bar arbitration award as to disputed attorneys' fees) was tolled by the filing of a civil complaint to recover the fees. (*Ibid.*) The court concluded it would be impractical and futile for the aggrieved party to seek to vacate an arbitration award because the arbitration award would only become binding if 30 days passed after mailing of the award

---

[14] In attachment 10c(2), Robert Clarkson and Clarkson Riley Rubin LLP, who represented Ted and Paula in the arbitration, stated Ted had not yet retained the law firm to represent him in any challenge to the arbitration awards. Further, Clarkson Riley Rubin LLP indicated even if both Ted and Paula's estate decided to retain the law firm, it would not represent either party "even with an informed written waiver of this actual conflict interest." But Ted could have retained another law firm or attorney to file and serve the petition to vacate the arbitration award or a response to Harry and Christine's petition to confirm within 105 days of service of the fee award. Or he could have signed a conflict waiver to allow his current attorney to continue to represent him. But filing a form petition stating no grounds for relief and not attaching the partition award at issue was the equivalent of not filing a petition at all.

14

and none of the parties sought a trial after arbitration.  (*Ibid.*, citing Bus. & Prof. Code, § 6203, subd. (b).)  Further, only after the aggrieved party is denied relief in the civil action would the arbitration award be subject to correction and confirmation.  (*Shepherd*, at p. 993.)  The *Shepherd* court did not address an impracticality defense beyond the unique facts of a nonbinding State Bar arbitration award.

Ted also relies on *DeMello v. Souza* (1973) 36 Cal.App.3d 79, 84, in which the Court of Appeal discussed the trial court's equitable powers to relieve a party of the 100-day deadline.  The *DeMello* court noted the court had narrow equitable powers, including granting relief under section 473 based on mistake, inadvertence, surprise, or excusable neglect where relief is requested at most six months from entry of the judgment or order, or using the court's inherent equitable power where a party was deprived of his or her ability to participate in the arbitration due to extrinsic fraud or mistake.  (*DeMello*, at p. 84.)  But as the Court of Appeal explained in *Abers v. Rohrs* in declining to follow *DeMello*, extending section 473 relief "would be an effective nullification of the statutory 100-day limitation on filing and serving a petition to vacate" (*Abers v. Rohrs, supra*, 217 Cal.App.4th at p. 1212).  Moreover, Ted did not file a motion under section 473 (timely or otherwise) or ask the trial court to exercise its equitable power, nor was he deprived of an opportunity to participate in the arbitration.

Finally, Ted contends any failure properly to petition to vacate the arbitration awards does not affect his right to challenge the arbitrator's power to make the award, citing *United Firefighters of Los Angeles v. City of Los Angeles* (1991) 231 Cal.App.3d 1576, 1581-1582.  Ted's reliance is misplaced.

There, the court determined the 100-day deadline in section 1288.2 did not apply because the appellants were not challenging the correctness of the award, but rather, the trial court's jurisdiction to compel arbitration in the first place. (*United Firefighters of Los Angeles*, at p. 1581.) Here, Ted consented to the arbitrator's subject matter jurisdiction by signing the arbitration agreement and agreeing to binding arbitration. (*Douglass v. Serenivision, Inc., supra*, 20 Cal.App.5th at p. 385 ["the subject matter jurisdiction of an arbitrator is purely a product of contract [citation], which by definition turns on the parties' mutual *consent*"].)

We need not reach whether the filing and service of a petition to vacate an arbitration award with a minor deviation from the filing and service requirements (for example, service of the petition three days late) constituted substantial compliance with section 1288 because here Ted's failure timely to serve the Roussos entities that owned the properties, the failure to join other Roussos entities, and the failure to state the grounds for relief or attach the partition award constituted a clear violation of sections 1285.8 and 1288 and deprived the trial court of jurisdiction.[15]

_____

[15] Although we do not reach the merits of Ted's appeal, we note the arbitrator had jurisdiction over the properties, which were owned by SMB LP, OF LP, and Liro, each of which was a party to the arbitration agreement. Thus, the arbitrator did not exceed his powers by resolving a dispute over the properties. (See § 1286.2, subd. (a)(4).) As to the other grounds raised by Ted, our review is limited to the grounds set forth in section 1286.2. "Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of

## DISPOSITION

The judgment is affirmed.  Harry and Christine Roussos are entitled to their costs on appeal.


FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.

---

the award or cause substantial injustice to the parties." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916; accord, *Moncharsh v. Heily & Blase, supra*, 3 Cal.4th at pp. 11, 33.)